HUDSON FORWARDING & SHIPPING CO., JOHN WANAMAKER *v.* UNITED STATES (No. 3672)[1]

[1] T. D. 47142.

222

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Robert C. O'Grady* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument December 6, 1933, by Mr. Brown and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise, consisting of wood flooring, was assessed for duty by the collector at the port of New York as manufactures of wood at 33⅓ per centum ad valorem under paragraph 412 of the Tariff Act of 1930, and, in addition thereto, at 25 per centum ad valorem under section 489 of that act.

The provisions of paragraph 412 and section 489, so far as pertinent, read:

PAR. 412. * * * manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for, 33⅓ per centum ad valorem.

SEC. 489. * * *. If any article described in paragraph 1811 and imported for sale is rejected as unauthentic in respect to the antiquity claimed as a basis for free entry, there shall be imposed, collected, and paid on such article, unless exported under customs supervision, a duty of 25 per centum of the value of such article in addition to any other duty imposed by law upon such article.

The involved merchandise was claimed in the entry to be artistic antiquities, over one hundred years old, and free of duty under paragraph 1811 of that act, which reads:

PAR. 1811. Works of art (except rugs and carpets made after the year 1700), collections in illustration of the progress of the arts, works in bronze, marble, terra cotta, parian, pottery, or porcelain, artistic antiquities, and objects of art of ornamental character or educational value which shall have been produced prior to the year 1830, but the free importation of such objects shall be subject to such regulations as to proof of antiquity as the Secretary of the Treasury may prescribe. Violins, violas, violoncellos, and double basses, of all sizes, made in the year 1800 or prior year.

On the trial in the court below, counsel for appellants introduced in evidence the report of the appraiser in answer to the protest. No other evidence was introduced by either party.

The report of the appraiser, so far as pertinent, reads:

The merchandise in question consists of wooden flooring having no artistic merit and not produced prior to 1830. It was advisorily classified as manufactures of wood at 33⅓% under par. 412 and in addition 25% ad val. under section 489 if imported for sale, act of 1930.

In referring the cause to the United States Customs Court, the collector reported that—

* * * The merchandise in question, imported by the firm of John Wanamaker, as actual owner or ultimate consignee, was claimed at time of entry to be free under provision of paragraph 1811, and described on entry as furniture (antiques—artistic, over 100 years old).

The appraiser reports that said merchandise consists of wooden flooring having no artistic merit and not produced prior to 1830; appraiser's special report herewith.

Said merchandise was accordingly assessed with duty at 33⅓% ad valorem under paragraph 412 and in addition thereto at 25% ad valorem under section 489 of said act.

Note Abstract 9456 and T. Ds. 43584, 42678, and 44093.

Counsel for appellants claimed in the court below, and claims here, that as both the appraiser and the collector found, as a fact, and, accordingly, held, that the imported merchandise had no artistic merit, and as such findings, there being no evidence to the contrary, are final and conclusive, the merchandise is not an artistic antiquity, and, therefore, is not described as such in paragraph 1811, *supra;* that it is not otherwise described in that paragraph; and that, as the 25 per centum ad valorem duty provided for in section 489, *supra,* is expressly limited by the provisions of that section to articles described in paragraph 1811, the merchandise is not subject to such additional duty. Counsel for appellants further contend that even had it been established that the merchandise was produced prior to the year 1830, it is neither described nor provided for in paragraph 1811, *supra,* because it is not an artistic antiquity as defined by this court in the case of *Mayers, Osterwald & Muhlfeld, Inc.* v. *E. F. Bendler et al.,* 18 C.C.P.A. (Customs) 117, T.D. 44093.

It is conceded by counsel for appellants that the merchandise was properly assessed for duty as manufactures of wood under paragraph 412, *supra.* It is also conceded that the collector and the appraiser both held that the merchandise was not produced prior to the year 1830, and it is not denied that it was imported for sale.

The court below rejected the claims of counsel for appellants as being untenable, and overruled the protest.

It is contended by counsel for the Government that the Congress did not intend to limit the application of the 25 per centum ad valorem

rate of duty provided in section 489 to articles described in paragraph 1811, but that the provisions of that section should be construed as though they read:

"If any article described in", *or claimed to be free of duty under*, "paragraph 1811 and imported for sale is rejected as unauthentic in respect to the antiquity claimed as a basis for free entry, there shall be imposed \* \* \* ", etc.

In the case of *Mayers, Osterwald & Muhlfeld, Inc.* v. *E. F. Bendler et al., supra*, this court, in considering the scope of the provisions for "artistic antiquities," contained in paragraph 1811, *supra*, among other things, said:

The paragraph begins with the words "Works of art." These words are followed by such words as "works in bronze, marble, terra cotta," etc. Obviously, Congress did not intend to permit all works in bronze, utilitarian and otherwise, more than 100 years old, to be admitted free of duty. We must read into those words something more, and we think "works in bronze," etc., must have at least some of the essentials of works of art or objects of art in order to fall within the paragraph. So, in construing the words "artistic antiquities," we should not overlook their association with the words "works of art," and, considering them together, we arrive at the conclusion that "artistic antiquities" under the paragraph must be productions embodying in their creation aesthetic expression.

It does not necessarily follow that the inclusion of this element must make them works of the fine arts, but in order to be "artistic," as that word is used in paragraph 1708, there must be in the production of the article a mental concept resulting in an aesthetic expression of the producer, or, applied to this case, the cutter of the diamond. If his work was merely that of a cutter following well-established rules, and involving no aesthetic expression originating in his own mind and thought, it is not artistic, however beautiful it may be.

We are unable to agree with the contentions of counsel for the Government. If the Congress had intended that the additional duty of 25 per centum ad valorem, provided for in section 489, should be applicable to all imported articles *claimed* to be free of duty under paragraph 1811, but which were "rejected as unauthentic in respect to the antiquity claimed", it would have been an easy matter for it to have said so. The provisions of section 489, however, are limited to articles "*described* in paragraph 1811 and imported for sale", if "rejected as *unauthentic in respect to the antiquity claimed* as a basis for free entry." (Italics ours.) Obviously, the Congress did not intend, by the use of the word "described" to mean *provided for*, because only such articles *described* in paragraph 1811, as were "produced prior to the year 1830", are *provided for* therein, so far as the issues here are concerned. An article may be described in a paragraph of a tariff act without being dutiable under that paragraph. As an illustration, paragraph 1811 provides for "Works of art (*except rugs and carpets made after the year 1700*)." (Italics ours.) Rugs and carpets made after the year 1700 are *described* in that paragraph, but they are not *provided for* therein. If the word "described", contained in section 489, was intended to mean *provided for* in paragraph 1811, the 25 per

centum ad valorem duty could never be properly assessed, and, consequently, the involved provisions of section 489 would be inoperable.

It is evident that "Works of art * * *, collections in illustration of the progress of the arts, works in bronze, marble, terra cotta, parian, pottery, or porcelain, * * * and objects of art of ornamental character or educational value", although described in paragraph 1811, are not provided for in that paragraph, unless they were "produced prior to the year 1830."

It will be observed that the additional 25 per centum ad valorem duty provided for in section 489, *supra*, is applicable to imported articles which are described in paragraph 1811, if "imported for sale" and "rejected as *unauthentic in respect to the antiquity claimed* as a basis for free entry." (Italics ours.) There is nothing in the provisions of section 489, *supra*, to indicate that the Congress intended that such additional duty should be assessed against imported merchandise, merely because it was claimed by the importer to be free of duty under the provisions of paragraph 1811. Congress probably had in mind that, although it might be difficult for the customs officials to determine whether imported articles were produced prior to the year 1830, it would not be difficult for them to determine whether they were productions of the artist, "embodying in their creation aesthetic expression", or, on the contrary, mere productions of the artisan.

In view of the fact that the involved merchandise, although claimed in the entry to be free of duty under paragraph 1811, is not "described" in that paragraph as an artistic antiquity or otherwise, we are of opinion that the additional 25 per centum ad valorem duty provided for in section 489 was not intended by the Congress to be applicable to it.

For the reasons stated, the judgment is *reversed*, and the cause *remanded* for proceedings consistent with the views herein expressed.